Our next case this morning is Burke v. Glanz and Burke v. Regalado. Case numbers 18-5042 and 18-5043. Counsel would you be so kind as to see them? Thank you judges. May it please the court, judges, my name is Guy Fortney. I represent appellants Vic Regalado in his official capacity and appellant Stanley Glanz in his individual capacity from a jury verdict in the Northern District of Oklahoma a couple of years ago. A new trial should be granted in this matter along with reassignment to a different judge as the verdict reflects an unprecedented abuse of the process at all stages from pre-trial, trial, jury instructions and closing argument which all resulted in a verdict which can only be characterized as excessive and punitive. The verdict should be set aside and a new trial granted. The errors below is set forth in our brief for both numerous and substantive but for purposes of this presentation I will focus on an error, a couple of errors that I think permeate and a lot of the other errors kind of pivot off of and really in their own right demand a new trial in this matter. Could I just ask you, maybe this is a threshold question, but I have a question about whether qualified immunity is still in the case. I know it was denied at the summary judgment stage but then of course the case went to trial and there were post-trial, post-judgment motions filed. My question is whether the qualified immunity issue was raised at that point. I've been having a hard time finding it there. I understand and having reviewed the record in this case, prepared the briefs and the reply brief on the issue waiver, I would agree that it's not quite clear in there. I would say that the qualified immunity challenge is a legal challenge. The case law that we put in our reply brief posits that all legal challenges survive. It is not a factual inquiry at this point but it is a legal challenge that we have on the qualified immunity. And then factually, at the close of the plaintiff's case, we by stipulation reserved the Rule 50A motion for judgment as a matter of law for the sufficiency of the evidence on all matters of plaintiff's claims and we have in our briefs sites for the stipulations to that. Glantz also filed a 50B motion challenging the sufficiency of the evidence to sustain a supervisory liability claim against him in his individual capacity. His sufficiency challenge to the reprehensibility of the element of punitive damage is intrinsically woven with the merits of the liability and therefore we feel that we have preserved it. We've not waived the qualified immunity challenge in this instance. I just have one follow-up. I don't want to take too much of your time on this issue but just one follow-up. And that is, when you challenge sufficiency of the evidence after the trial, that would put the issue of the constitutional violation back in play. I understand that. But to characterize the qualified immunity issue as purely legal, this is what I want to ask you about. Because it seems to me that by the time you've had the trial, you have a more robust evidentiary record than you did at qualified immunity. And the second element of qualified immunity, which is clearly established law, is a legal question up to a point. But it's a legal question that has to be related to whether you've got clearly established law that's similar to this case. And so you've got this new evidentiary foundation there. And that's why I'm having some trouble seeing that qualified immunity is still in the case. I don't disagree with your Honor's characterization. We have a much more robust record than we did after a trial. And certainly I would say that our appeal pivots on a reflection of the legal issues and the legal errors below and a look at the sufficiency of the evidence. I don't believe that the issue of qualified immunity for Stanley Glanz is an issue, honestly, that I think this appeal will pivot off of or that it is one thing that will be dispositive in this issue. We're looking at... You spilled a lot of ink on it in the brief. I spilled a lot of ink in that brief, 35,000 words. And trust me, it was a burden to get it down to that. And I appreciate that, Judge. There was a section on that, but I think a large portion of the brief was directed at other matters. I would like for you to continue on because I want to get your nuggets here to articulate the issues you say are preeminent that pervade this case. Yes. Let me jump right into there if I can. The issue that I think just permeates throughout this case is a failure of the court to require at any point in the trial, pre-trial, trial, or in closing argument, that we assess the actions of the individual actors, the subordinate officers in the case, as to whether or not they committed any sort of constitutional violation for purposes of assessing supervisory or official capacity liability. As the court well knows, in almost every circumstance, in order to have supervisory or official capacity liability, you must have an act of an underlying officer who committed a constitutional violation. Let's look at the evidence of trial. I mean, I didn't watch 50 hours of tape, but I watched some amount of video, and I saw identifiable people that looked like they were enforcement people. Some of them obviously were medical people. And I watched them as they were going on. I mean, and this tape is available to the jurors. I mean, clearly identifiable people. The tape doesn't reflect what's going, and I don't disagree that you can look at the tape, but you can't see in the individual's minds to understand what the mens rea is for deliberate indifference. And that's what's required by the case law. No, I'm watching them as they, you call it the bean hole, where they stick the food and they drop it. They just drop it to this guy that they can observe for hours, if not days, his head, little movement except for some erratic movement of his arms to try to reach the water that had been set next to him. But the consideration is not just the actions, but the mental state of these individual officers. And when you have a case that's tried against jail staff as a conglomerate, a collective, against medical staff as a collective, you're denying what's required under the law to look at the individual mens rea. So the way I do it is that I guess I have to get some of these officers on the stand and say, please tell me, did you intend to hurt this gentleman? Is that the way I do it? The way you do it is to present evidence of what you can infer their mental state is. From watching their actions on the video. You can't tell who's on the video, your Honor. What underlying evidence do I need to infer what the state of their mind is? You would need to know what they were thinking at the time. I know that, but what's the underlying evidence from which I can infer what their thinking is? Because I'm not going to get any direct evidence. And if I did, I'm not going to believe it. How do I get it? You would get it through testimony, you would get it through documents. It's through testimony of the person who's partly accused. I'm going to ask them what their state of mind is, and that's the only way I can get the proper statement. No, your Honor. Clearly. And I appreciate the discourse. The question is, what evidence can you infer their mental state? And you would look at documents. The video. I grant you, you could look at the video. You could look at many different things that were presented. But in the end, the case law requires that we don't litigate against a collective. Martinez v. Beggs rejects a systemic theory of liability where we're just looking at a collective group. The jail staff did this. The jail staff did that. The medical staff did this. The medical staff did that. You have to name the individual. You have to identify them and make some attempt to understand what their mens rea is for deliberate and different purposes. Why doesn't the video on its own establish that to identify those individuals and actually watch what they're doing? The people who were on the video were not sued. The people who were on the video were not named defendants. They don't need to be. In fairness, they don't need to be, but you must identify their conduct. You must specifically complain about their conduct, and you must make some effort to litigate against them. Here they didn't do it. I'm watching their conduct. I mean, you know, a picture's worth a thousand words, and I've got a motion picture here. Your Honor, with all due respect, the people on the video, the actions, as you said, of throwing in the food, you don't know who that is. They're not identified on the video. The video is not the end-all to be-all. You have to understand not only from the jailer's standpoint, and their own plaintiff expert testified that none of the detention officers failed in their duty and obligation to provide or refer this individual to medical to make any sort of determination, but you also have to understand what the medical staff, what they're seeing and what their belief is. Granted, they wrongly believed that this man was not injured. They wrongly concluded that he was... How many days did they make that conclusion, that wrong conclusion? That wrong conclusion probably was over the course of three to four days. And as much as six? Maybe as much as six. Yes. But you've got a condition that... How many of those days from zero to six was he in cell number one where the video was running and he's laying naked on a blanket? Up to two and a half until he died. And he was brought into that cell, he was drug into that cell on the blanket, correct? That is correct. Your Honors, I think I've briefed very well the issue of the lack of identification and what we think the law requires with regard to individual assessment of the officers. I'd like to move... And this is the argument you're making on the jury instruction. It's the argument that affects the pretrial conference order that says that any individual... We were without notice of who they were going after. The jury instructions and the pretrial conference order posit that anybody who we talk about at trial might provide a basis for the underlying liability. We have a jury verdict and you want that undone, basically. Yes. And so the sufficiency, the evidence standard goes there. But it seems like you're making more of a procedural argument that maybe there should have been a more specific jury instruction, pretrial order, a special verdict. In other words, some identification of some particular person that committed the underlying offense. Isn't that more your argument, not so much sufficient? How do those two square? That is absolutely our argument. We offer jury instructions that are contained within the record that we wanted more specific so that you could find, like in Garcia versus Salt Lake City, that you could have a jury instruction. Did you offer a special verdict form or special interrogatories? Yes, Your Honor. And where is that? It is patterned off of Garcia versus City of Salt Lake with the idea that, once again, we need to make that sort of individual finding. And one other point about, and I want to differentiate between City of Salt Lake because it's an interesting case where there is no civil rights violation, but you have municipal liability. And that there's a jury instruction in that case that was not given in this case, but allowed for liability alone on a policy, practice, or procedure. And it's cited in Garcia versus Salt Lake, the jury instruction is, that allowed for liability solely on the policy itself. No such jury instruction was given in this case. I want to pivot, if I can, just quickly. Actually, I'm sorry, can I get you to be specific? What is this collective argument that you're making? Which specific errors, argument for error, does that argument go to? It's lack of notice. Okay, how can you understand that? If we don't, if the complaint and the pretrial order doesn't give us notice as to who they're saying committed a constitutional violation, it makes it impossible to defend. The trial was a 30-day fiasco on anybody that they mentioned we might have to defend on. Okay, so it's the pretrial. It's the pretrial, it's the jury instructions. It's the jury instructions, any other? Those would be the two main points, Your Honor. Thank you. Okay, there is substantial argument about the outrageousness of the closing argument in our brief. This was a closing argument that really was unparalleled, in my view, for its error. Just a quick question about that, that I had. In going through the closing argument, there were objections to some of the statements, but there weren't objections to some of the other statements that you are complaining about now. Would we review those for plain error? No, I think you can review them for plain error. At some point in time, the futility of objecting to the disreport judge became apparent, and we were simply making ourselves a nuisance by interrupting plaintiff counsel's outrageous closing argument. I know we're at a lot of issues. At your pleasure, Your Honor. I had a question on the recusal issue I was hoping you could address. I guess my question is whether you're advocating for a rule that a judge must recuse from any case involving a party that his former firm had previously sued when he was there. Is that the rule that we're looking at? That's not the rule that I'm looking at, that I'm advocating for, Your Honor. In this instance, not only did we have that fact that it occurred, but we also had his former partner expressing negative opinions about the defense in this case, the parties in the defense, the Tulsa County Sheriff's Office and the sheriff, his own view of how negatively he viewed them. That is the bias and the prejudice that we were affected with that we found out late, and that was the basis for the recusal, not the mere fact that he represented them. I don't think that's the basis. It's the expression of bias and prejudice as told by his counsel. The judge at the hearing, one of the last statements I remember, just simply said, there are only two people who know what my views were. One would be Joe Wolgamuth, the other is myself, and then he denied our motion to recuse. There is an appearance there of bias and impropriety that he should have recused himself from, and our experience at trial taught us that that bias and prejudice was real. Does the timing on when the district judge assumed office in relation to when this underlying incident occurred, does that matter on the disqualification issue? Are you referring to maybe the length of time in the past that it had occurred, Your Honor? It was dissipated or it just kind of evaporated. When was the district judge appointed? You know, I'm sorry I don't have that fact in my head, but it was probably about three to four years, maybe three years before this trial had gone on. So it was after the incident but before the trial? After the death. Is that true? I don't know, and I hate to misspeak factually to Your Honor's question. Obviously my time has expired and I appreciate the time. Thank you, counsel. Good morning. My name is Bob Blakemore. For the plaintiff, Robbie Burke, for the estate of Elliot Williams. This is a tragic case involving truly barbaric mistreatment of a human being, unimaginable suffering, and a lingering death. A case involving the evils of most immediate concern to the drafters of the Eighth Amendment, as stated by the Supreme Court in Estelle v. Gamble. This is one of those worst cases as described by the court in Estelle. Hopefully, none of us will ever again see a case of such callous neglect or inconceivable human suffering. Counsel, let me direct you to a specific issue. Sure. I have serious concern. Yes, sir. And that is the evidentiary issue regarding the McKelvey testimony and the report that he generated. Now McKelvey is the fellow who was appointed by the Tulsa County to investigate this, generally the operations of the jail, right? Yes, sir. He was, I believe, in internal affairs at the time and was a corporal with the… What I'm concerned about are the exhibits PX110, PX115, which appear to be attachments to his report that are affidavits from people that are clearly hearsay. And those came in. I mean, we even have affidavits from inmates, right? Aren't they included in there? Well, I think those that are at issue in the appeal are transcripts of the recorded interviews of two inmates who were both at the time… Clearly hearsay. Hearsay, but we argued that they are accepted under 801-D2-D… Wait a minute, wait a minute. First of all, you say it's a report under 803-8 and therefore is an exception to the hearsay rule. Yes, sir. Then you say if that fails, then they're admissions to the parties. Right. Well, here's my problem. I don't see how attachments to the report are necessarily part of the report in that that way you can sneak in hearsay, particularly of inmates. Well, with respect… And on the admission, how is it even conceivable that an inmate can be associated with a party, so it's an admission to the party? At the time that those statements were made by those two inmates, they were acting as trustees for the jail, and it's our argument that they were… Well, that's just their status. They were allowed more freedom. They could go out and help clean the streets of Tulsa or umpire Little League baseball games, things like that. That didn't make them a part of the county, so that their statements were admissions to the county. You're not saying that, are you? It was our argument that they were agents under 801-D. Yes, sir. Okay, if you take this trustee status, then they had to be making these statements in their capacity, not just as a generalized inmate, but as a trustee, and they weren't doing that, were they? Oh, I believe so, Your Honor, because they were… the only reason that they became witnesses to what happened to Mr. Williams is through their work as a trustee. But is their status as a trustee that makes them so associated with the state that their statements are admissions? That is our argument, and if the court decides otherwise… Do you see what generally this status means, as a trustee? What it means as trustee is that they perform work at the jail, for the jail, under the guidance of the jail, and again, as agents of the jail. And so their statements in the affidavits were things they observed while they were acting as a trustee? Yes, sir. I have a related question, and that is the statements from the CHC medical staff. How do they come in? Why are they here, say, when CHC is an independent contractor of the jail? How can the staff be an employee or agent of the jail or the county? Well, actually, under the contract, it specifically addresses that, that they were agents of the… with CHC, that they were agents of the Tulsa County Sheriff's Office. And the contract clearly provides that Tulsa County Sheriff's Office remained in control and was to supervise the medical program and the personnel. So I think they were clearly… the medical personnel were clearly agents and would fall under 801D. What about addressing Mr. Fortney's argument about the sort of collective liability issue? Here we are now reviewing sufficiency of the evidence determination in response to the JMOL motion. Can the jury verdict tell us who was found to have been deliberately indifferent? Yes, and we addressed this in the brief. I know, but how does the jury verdict tell us who was deliberately indifferent? Well, the two defendants were… Talking about the underlying offense. The underlying offense. You have a supervisory liability claim against the sheriff, but I'm talking about the people who were actually there, and they have to commit a violation for there to be a supervisory violation. Who committed the underlying violation? Who was it? Well, there were multiple individuals. You haven't given me a name. Well, okay, Dr. Washburn. Okay, did the jury say it was Dr. Washburn? We presented evidence… Did the jury say it was Dr. Washburn? No, sir, the jury did not say it was… So how are we supposed to know which of the individuals the jury thought had committed the violation? Well, I don't know that that's… it's an element to show that one or more agents of the Tulsa County Sheriff's Office committed an underlying violation. We sued two defendants. We presented a mountain of evidence that multiple individuals… Look, I know there's a mountain of evidence, and we're trying to scale the mountain, but in the course of doing so, we're trying to review the record. I mean, is it our task to kind of piece through the record and say, oh, Dr. Washburn must have been the one? Well, he's not the one. Well, let me finish. I'm sorry. Or one of the nurses must have been the one, or one of the detention officers must have been the one. Is that our task on appellate review? Is that what we have to do? I mean, you've got to find somebody committing the underlying constitutional violation. How is an appellate court on this record supposed to go about doing that? Well, we provide that evidence, and actually there's a section in the brief where I believe I have 18 footnotes of 18 specific individuals, and I cite to the evidence in the record that supports a finding that each one of them were deliberately indifferent, and there are many others. It's a case where literally from the… Isn't there a possibility, though, given that we have a general jury verdict, that the jury might have thought it was one person, and we don't know who it was, and then we're going through your brief and opposing counsel's brief and trying to match evidence to individuals. How do we know that we're getting the right one, that the jury thought committed the underlying violation? Does it matter? I don't know that it matters when the evidence in this case is so strong of so many individuals that were deliberately indifferent to Mr. Williams' serious medical needs. It was from the moment that he broke his neck and began complaining of paralysis, it was obvious that he needed immediate medical attention, and everyone at that jail that came into contact with him and knew that he was paralyzed had the opportunity and the duty to help him, and nobody did anything to help him. They watched him slowly die for six days. Well, how did the evidence come in in this chronology? I mean, did it come in in such a way that there was a witness on the stand saying, this is what happened at this stage when he came in to the jail, and that person names names and identifies people, and then somebody else testifies about the next stage all the way down until we get to cell number one? I mean, how did you put on all this evidence? Most of that evidence, Your Honor, was put on actually through Mr. McKelvey. I mean, his report is, I mean, we have a lot of criticisms of the Sheriff's Office, obviously, in this case. One area we do not criticize them is in the investigation that they did. We got that report late in the discussion. So McKelvey is testifying, and he's got his report. He was on the stand for days, right? Yes, sir. Now, when he testifies, is he examined in such a way that he says, this person did this vis-a-vis the victim at this time, at this stage? Yes, sir. He basically followed the chronology of his report, his extensive report, and it was meticulous and detailed. I mean, the report itself establishes that, but it was put on mostly through McKelvey, and then also we put on our expert witnesses, including Dr. Allen, who testified as to the specific medical personnel through the medical record that he believed fell below the standard of care and were indifferent to Mr. Williams' care. So I take it then I can take the transcript of the McKelvey testimony and set aside that McKelvey report and almost just go through the two at the same time, and I will have names and dates so that I can identify this person and what they did or did not do. Yes, sir. And we attempted to do that through our brief and chronological order in citing to that evidence. Much of it is McKelvey's testimony and from his report. Counsel, before you move on, I just want to get your position straight. Are you arguing that you do not need to identify a specific person who committed a constitutional violation, or are you arguing you have identified multiple people, or are you arguing in the alternative? We have identified multiple individuals, and the idea that the county and the defendants were not on notice of that evidence is belied by the procedural record in this case. To the extent that we received more evidence through the discovery process, that was presented in great detail in our response to the motion for summary judgment. When they filed their reply, they raised no issue about the adequacy of the pleadings. They raised no issue about surprise, that it was unfair, there was a violation of their due process rights, any of those things. And in fact, when they discussed in their reply brief the issue of underlying violation, the defendants themselves used broad, collective-type language, such as the medical staff, detention staff, that type of language. And their argument was essentially that we had not shown through our response that anyone at the jail committed an underlying violation of Mr. Williams' constitutional rights. This issue of surprise and inadequacy of the pleadings was not raised until the eve of trial, and even then they didn't raise the objection in the pretrial order itself. Well, maybe I can ask you a different version of that question, which is can you address the jury instruction, your opposing counsel's jury instruction argument, that the jury was not required here to find a specific person committed a specific violation? We believe that the jury instruction was inadequate based on the evidence that was gathered through discovery and that was presented at trial, because the defendants were limiting the underlying violations to specific individuals that were mentioned in the second amended complaint, again, well before we had the entire evidentiary record of what occurred. And again, the evidence in this case, these are their reports. McKelvey was their employee. It's their video. They knew very well what happened in this case. They knew what happened to Mr. Williams, and they were apprised of what the basis of our claims would be. Counsel, before you sit down, I need to ask you about the set-off issue. Yes, sir. Because I understand that Section 1983 doesn't address set-offs. Section 1988 says we should fill in the gap using federal law, and if federal law isn't available, state law. Why isn't the Oklahoma set-off statute? Why shouldn't that have been applied here? Well, and this is addressed in detail by Judge Dowdell in his order, but his finding was, and what we argued, is that a dollar-for-dollar set-off, which is what is applied by the Oklahoma statute, is inherently inconsistent with one of the statutory purposes of Section 1983, which is to deter future violations of the Constitution. In other words, if the set-off is such that the constitutional tort fees does not have to pay, then that's contrary to that statutory purpose. That's on the issue. So you're relying on this purpose rationale? Yes, with respect to the— But if the $10 million award is a reasonable number for total damages and one of the parties has settled out, why would it be in conflict with the purpose of 1983 to do the set-off? I understand that you're making the purpose argument. What I'm not understanding is why the set-off would be inconsistent. I mean, purpose is a pretty general word, and I need a little more than just saying purpose to understand why there shouldn't have been a set-off here. One of the other issues that is addressed is the issue of indivisible damages. And in this case, we would not have been able to hold CHC liable for the conduct of— CHC employees, they were agents of the Sheriff's Office, but then there are the detention staff who are not agents of CHC. And there were numerous incidents in the record of conduct of the detention staff specifically that caused the damage. Am I correct in the chronology here that from the time of the settlement with CHC to about the time of the pretrial hearing, when you were talking about the pretrial order, was about four years? Yes, sir. And so four years . . . Or three, three. Three, okay. So for three years, the defendants knew that the medical group had settled out? That's right. And at that time, there was an original complaint? Yes. Did they move to amend their answer to that complaint? No, sir. And there was an amended complaint then? Yes. Did they put set-off in as an affirmative defense in their answer to that? No. And then there was a second amended complaint? Yes. And they answered that? Yes. Did they put in an affirmative defense of set-off? No, sir. When did the first time the issue of set-off arise? When in the record am I going to see something where I can say that the defendants are raising the issue of set-off? There was a brief, and I don't remember when it was, that they indicated that they might seek set-off at a later date. When is this in relation to the pretrial? I don't remember. Was it before the pretrial? Yes. I just know they never raised it in an actual pleading until the pretrial order. Okay. That's when they tried to get it in? Right, yes, sir. And their position was beyond? That's right. Okay. Anything else? Thank you. Thank you. Can we give Mr. Courtney a little more time? Your Honor, the deputy went over about five and a half, and he went over about three. Up to the panel, if you want to add anything. Why don't we give you two minutes? Okay. I appreciate that very much. I appreciate the extra time. As you know, the briefing was voluminous and a lot of issues. Let me address the last point of Judge Murphy, if I can begin there. With regard to when was the issue of set-off raised, there came a time when CHC settled out of this matter while we had not seen the settlement. In what year was that, sir? 2014. 2014? Thank you, counsel. 2014. They moved to dismiss them with prejudice pursuant to a Actually, they just filed a stipulation of dismissal. The court denied that, acknowledging that at this point in the procedural, under the federal rules, you had to have a stipulation of dismissal, and they certainly did not have that of all parties, which included the city of Owasso at the time and the Tulsa County defendants. We filed an objection to the dismissal to make sure that we preserved the issue and acknowledged at that time that there may be an issue of set-off. In my view, the issue of set-off doesn't become ripe until there is something to set it off. Once a verdict was put in place, we then sought to have the set-off applied and proceeded from there. So it's not an affirmative defense? The court acknowledged in our pleadings, and I think this is included. I'm just asking you, are you saying it's not? It is in there, and what's significant to me, Ron, is the court What is and where? First of all, my question is, is set-off an affirmative defense? Yes or no? Yes, and the court found in the order granting the motion to dismiss that the court, when we had raised the issue of set-off, it had not been waived, and the court put in a footnote, the court need not cross this bridge at this time, but notice that the non-settling defendants will not be deemed to have waived any presentation of the issue of settling defendants' liability to the jury, simply as settling defendants' dismissal. And we believe it was preserved at that time. When did that occur? That would have occurred in 2014 at the time CHC was dismissed upon motion. The first amendment complaint been filed then? Yes. The second amendment complaint? Yes. It had been filed too? Sure, yes. In 2014? Yes, sir. Your Honor? Counsel, I think you used up your extra two minutes. Okay, well thank you for your time. Thank you, counsel. The case will be submitted.